## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ESTHER EZEBUNWA,

        Plaintiff,

  v.

NEON THERAPEUTICS, INC., ROBERT
BAZEMORE, CARY PFEFFER, ROBERT
KAMEN, ERIC LANDER, HUGH O'DOWD,
STEPHEN SHERWIN, ROBERT TEPPER,
and MERYL ZAUSNER,

        Defendants.

Civil Action No.

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

---

        Plaintiff Esther Ezebunwa ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Neon Therapeutics, Inc. ("Neon" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Neon and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Neon and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to BioNTech SE ("BioNTech") (the "Proposed Transaction").

2.      On January 15, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with BioNTech, pursuant to the which the Company's shareholders will receive 0.063 American Depository Shares for each share of the Company's common stock owned (the "Merger Consideration").

3.      On April 2, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Neon and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Neon shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.   In addition, the Company's stock trades on the NASDAQ Global Select Market ("NASDAQ"), which is headquartered in this District.

**THE PARTIES**

8.      Plaintiff is, and has been at all times relevant hereto, a common shareholder of Neon.

9.      Defendant Neon is incorporated under the laws of the Delaware, with its principle executive offices located at 40 Erie Street, Suite 110, Cambridge, Massachusetts 02139.   The Company's common stock trades on the NASDAQ under the symbol "NTGN."

10.      Defendant Robert Bazemore ("Bazemore") is and has been a director of Neon at all times during the relevant time period.

11.     Defendant Cary Pfeffer ("Pfeffer") is and has been the Chairman of Neon's Board at all times during the relevant time period.

12.     Defendant Robert Kamen ("Kamen") is and has been a director of Neon at all times during the relevant time period.

13.     Defendant Eric Lander ("Lander") is and has been a director of Neon at all times during the relevant time period.

14.     Defendant Hugh O'Dowd ("O'Dowd") is and has been the Company's President, Chief Executive Officer, and a director at all times during the relevant time period.

15.     Defendant Stephen Sherwin ("Sherwin") is and has been a director of Neon at all times during the relevant time period.

16.     Defendant Robert Tepper ("Tepper") is and has been a director of Neon at all times during the relevant time period.

17.     Defendant Meryl Zausner ("Zausner") is and has been a director of Neon at all times during the relevant time period.

18.     Defendants Bazemore, Pfeffer, Kamen, Lander, O'Dowd, Sherwin, Tepper, and Zausner are collectively referred to herein as the "Individual Defendants."

19.     The Individual Defendants, along with Defendant Neon, are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**<u>Background of the Company</u>**

20.     Neon is a clinical-stage immuno-oncology company in the field of neoantigen-targeted therapies. The Company develops neoantigen-targeted therapies that use two distinct approaches: (i) personal therapies that target neoantigens specific to each individual; and (ii)

therapies that target neoantigens that are shared across subsets of patients or tumor types. These approaches focus on targeting a prioritized set of what the Company believes are the most therapeutically-relevant neoantigens. Neon applies these two approaches to develop neoantigen-targeted product candidates using multiple treatment modalities.

### The Company Announces the Proposed Transaction

21.     On January 16, 2020, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> MAINZ, Germany and CAMBRIDGE, Mass., Jan. 16, 2020 (GLOBE NEWSWIRE) -- BioNTech (Nasdaq: BNTX, "BioNTech") and Neon Therapeutics, Inc. (Nasdaq: NTGN, "Neon") today announced that they have entered into a definitive merger agreement under which BioNTech will acquire Neon in an all-stock transaction valued at approximately $67.0 million. Neon is a biotechnology company developing novel neoantigen-based T cell therapies. Upon closing, it will operate as a subsidiary of BioNTech, a global clinical-stage biotechnology company focused on patient-specific immunotherapies for the treatment of cancer and other serious diseases. The transaction will combine two organizations with a common culture of pioneering translational science and a shared vision for the future of cancer immunotherapy.
>
> "This acquisition fits with our strategy to expand our capabilities and build our presence in the U.S. and further strengthens our immunotherapy pipeline," said Ugur Sahin, MD, Co-founder and CEO of BioNTech. "I am particularly excited about the adoptive T cell and neoantigen TCR therapies being developed by Neon, which are complementary to our pipeline and our focus on solid tumors."
>
> "We are very proud of all we have accomplished since we founded Neon and look forward to joining forces with BioNTech to continue to build a business that provides life-changing immunotherapy products to patients battling a variety of cancers," said Hugh O'Dowd, Chief Executive Officer of Neon.
>
> Neon has deep expertise in the development of neoantigen therapies, with both vaccine and T-cell capabilities. Neon's most advanced program is NEO-PTC-01, a personalized neoantigen-targeted T cell therapy candidate consisting of multiple T cell populations targeting the most therapeutically relevant neoantigens from each patient's tumor. Neon is also advancing a precision T cell therapy program targeting shared neoantigens in genetically defined patient populations. The lead program from this approach, NEO-STC-01, is a T cell therapy candidate targeting shared RAS neoantigens. In addition, Neon has assembled libraries of high-quality TCRs against various shared neoantigens across common HLAs.

Neon's pipeline is underpinned by its platform technologies including RECON®, its machine-learning bioinformatics platform, and NEO-STIM™, its proprietary process to directly prime, activate and expand neoantigen-targeting T cells ex vivo.

**Transaction Details**

Under the terms of the definitive agreement, Neon will, following consummation of the acquisition, merge with Endor Lights, Inc., a Delaware corporation and a direct, wholly-owned subsidiary of BioNTech and become a wholly-owned subsidiary of BioNTech. At closing, BioNTech will issue, and Neon shareholders will receive 0.063 American Depositary Shares (ADS) (each ADS representing one ordinary share of BioNTech) in exchange for each of their shares of Neon. The exchange ratio implies a deal value of $67 million, or $2.18 per share of Neon, based on the closing price of BioNTech's ADSs of $34.55 on Wednesday, January 15th, 2020.

The transaction was unanimously approved by both BioNTech's and Neon's boards of directors. The transaction, which is expected to close during the second quarter of 2020, is subject to approval of Neon's shareholders and the satisfaction of customary closing conditions. Certain stockholders of Neon owning approximately 36% of the outstanding Neon shares have entered into voting agreements, pursuant to which they have agreed, among other things, and subject to the terms and conditions of the agreements, to vote in favor of the Neon acquisition.

Ondra Partners is acting as the exclusive financial advisor to Neon and Goodwin Procter LLP is acting as legal counsel to Neon. Duff & Phelps LLC provided a fairness opinion to Neon's board of directors in connection with the transaction. Covington & Burling LLP is acting as legal counsel to BioNTech.

### FALSE AND MISLEADING STATEMENTS
### AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

22.     On April 2, 2020, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

23.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement

misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Management's Financial Projections**

24.     The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

25.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections. Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

26.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

27.     Specifically, with respect to each set of financial projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) EBITDA; (ii) EBIT; and (iii) Free Cash Flow.

28.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding Duff & Phelps' Financial Opinion**

29.     The Proxy Statement contains the financial analyses and opinion of Duff & Phelps LLC ("Duff & Phelps") concerning the Proposed Transaction, but fails to provide material information concerning such.

30.     With respect to Duff & Phelps' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Duff & Phelps' selection of the discount rates ranging from 12.5% to 13.5%; and (ii) cash and equivalents, estimated working capital net deficit and other liabilities, and the estimated value of the outstanding Neon options.

31.     With respect to Duff & Phelps' *Historical Premium Analysis*, the Proxy Statement fails to disclose the individual transactions observed in the analysis, as well as the premiums paid in each of the observed transactions.

32.     Lastly, the Proxy Statement fails to disclose the timing and nature of past services provided by Duff & Phelps' to BioNTech or any of its affiliates, including the compensation received in exchange for said services.

33.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

34.     Without the above described information, the Company's shareholders are unable

to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information

regarding, among other things, the financial projections for the Company.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

40.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

41.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

42.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they

were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

43.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

44.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     The Individual Defendants acted as controlling persons of Neon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Neon, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

49.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 13, 2020                                           Respectfully submitted,


                                                               By: */s/ Joshua M. Lifshitz*
                                                               Joshua M. Lifshitz
                                                               Email: jml@jlclasslaw.com
                                                               **LIFSHITZ LAW FIRM, P.C.**
                                                               821 Franklin Avenue, Suite 209
                                                               Garden City, New York 11530
                                                               Telephone: (516) 493-9780
                                                               Facsimile: (516) 280-7376

                                                               *Attorneys for Plaintiff*